UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SONYA MEDINA WRIGHT o/b/o M.B.,
                         Plaintiff,          11-CV-6225T

             V.                              **DECISION**
                                             **And ORDER**
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

_____

## INTRODUCTION

     Sonya Medina Wright ("plaintiff") brings this action on
behalf of her son M.B. claiming that the Commissioner of Social
Security improperly denied her application for Supplemental
Security Benefits ("SSI") pursuant to Title XVI of the Social
Security Act.  Specifically, plaintiff alleges that the decision
of the Administrative Law Judge ("ALJ") was erroneous because it
was not supported by substantial evidence in the record.

     The Commissioner moves for judgment on the pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure,
on grounds that the ALJ's decision was supported by substantial
evidence and made in accordance with applicable law.

## BACKGROUND

     On September 17, 2007, plaintiff protectively filed an
application for SSI benefits on behalf of her school aged son as

a result of a worsening stutter, tic disorder and behavior problems (Tr. 117-122). Her application was denied on February 8, 2008 (Tr. 70-73). Following the denial of her application, plaintiff requested a hearing before an ALJ, and a hearing was held on February 2, 2009 before ALJ John P. Costello (Tr. 74-75, 80-83; see Tr. 26-66). Claimant and plaintiff were present at the hearing and were represented by counsel. Claimant is now 15 years old.

### The Hearing before the ALJ

At the hearing, plaintiff testified that she filed the claim due to increasing occurrences of troublesome symptoms and behaviors in M.B. that culminated in criminal behavior (Tr. 33). Plaintiff testified that she filed for SSI when M.B. was placed back in her custody after spending four years in five different foster homes (Tr. 51-52, 255). M.B. was arrested for stealing a pair of sneakers from JcPenney's and attempting to burglarize a metal car junkyard as well as attempting to steal a go-kart from a man's backyard. As a result, M.B. appeared in Family Court where he was placed on probation and required to adhere to a curfew (Tr. 38-39). Plaintiff's testimony regarding M.B.'s current behavior is somewhat contradictory. First she stated that he was complying with the rules set forth by probation, but later she stated that he had not been compliant (Tr. 40-42). Plaintiff testified that M.B. does not follow directions about chores, that

-Page 2-

he has to be physically forced to shower and get up for school in the morning, but he is able to take care of his personal hygiene without assistance (Tr. 49-50). She testified that he is unable to sit through a movie without interruption, he is generally not able to stay on task and refuses to follow her directions (Tr. 50). She also testified that she has had to call the police about once a month because M.B. breaks things or makes threats of violence (Tr. 53). Lastly, she testified that M.B. has been suspended twice, given a five day out of school suspension, and four in school suspensions (Tr. 47-48).

M.B. testified that he behaves in school (mostly) and passes his classes, and he is particularly good at math and writing (Tr. 58). He also testified that he has only violated the curfew one time. He stated that he can sit through classes in school and that the teacher does not get mad at him (Tr. 63).

In a decision dated May 20, 2009, the ALJ found that of the six domains of functioning M.B. had a marked impairment in interacting and relating with others and a less than marked impairment in the remaining five domains (see Tr. 13-24). As a result, the ALJ determined that M.B. was not disabled. Plaintiff appealed the ALJ's decision to the Social Security Appeals Council on May 26, 2009. The Appeals council declined further review on March 4, 2009 (Tr. 8, 1-5). This action for review followed.

For the reasons set forth below, I hereby deny the Commissioner's motion for judgment on the pleadings, and remand this case to the Commissioner for further proceedings consistent with this decision.

**DISCUSSION**

I.   Jurisdiction and Scope of Review

This court has jurisdiction under 42 U.S.C. §§ 405(g). 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C.S. § 405(g) (2007).  The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see

also Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting interferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard.  Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

II.   The ALJ's decision to deny Plaintiff's application for
      disability benefits under the Social Security Act is unclear
      and requires remand for reasons that follow.

The Social Security Administration has established a three-step sequential evaluation process for an ALJ to determine whether an individual under the age of 18 is disabled. 20 C.F.R. §416.924(a). The first step is to determine whether claimant is engaging in substantial gainful activity as defined by the Code of Federal Regulations ("CFR"). 20 C.F.R. §416.972. If the claimant is engaging in substantial gainful activity, the claimant is not disabled. If the claimant is not involved in substantial gainful activity, the ALJ will determine if the claimant has an impairment or combination of impairments that is severe. In order for an impairment to be severe, it must be more than a slight abnormality or combination of slight abnormalities that causes minimal functional limitations. 20 C.F.R. §416.924(c). If the impairment(s) is severe, the ALJ considers whether it meets, medically equals, or functionally equals the listings as outlined in the CFR. Functional equivalency is evaluated by considering six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1)(i-iv). The ALJ must compare the appropriateness, effectiveness and independence of the

-Page 6-

claimant against other children of the same age without impairments. 20 C.F.R. §416.926a(b).

To functionally equal the listings, M.B.'s impairment or combination of impairments must result in "marked" limitations in two or more domains of functioning or an "extreme" limitation in at least one domain. 20 C.F.R. §416.926a(d). If there is such an impairment(s), and it meets the duration requirement, the child will be found to be disabled. 20 C.F.R. §416.924(a)-(d).

A child has a "marked" limitation in a domain of functioning when his impairment(s) "interferes seriously" with the ability to independently initiate, sustain or complete activities. 20 C.F.R. §416.926a(e)(2). A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning which translates to at least two, but less than three, standard deviations below the mean on standardized tests. 20 C.F.R. §416.926a(2)(i). An "extreme" impairment interferes "very seriously" with one's ability to independently initiate, sustain or complete activities. An "extreme" limitation also means a limitation that is "more than marked." "Extreme" is the rating given to the worst limitations. However, an "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning expected on standardized testing with scores

that are at least three standard deviations below the mean. 20 C.F.R. §416.926a(e)(3).

The ALJ in this case found that: (i) M.B. had not engaged in substantial gainful activity at any time; (ii) that M.B. has a severe combination of impairments when his attention deficit hyperactivity disorder, borderline intellectual functioning and learning disability are considered together; (iii) that M.B. does not have an impairment or combination of impairments that meets, medically equals or functionally equals the listing and, as such, is not disabled within the meaning of the Social Security Act. I find that the ALJ's decision that M.B. did not meet listing 112.05 is not supported by substantial evidence. Further, I find that the ALJ erred in concluding that M.B.'s impairments did not meet or functionally equal the listing based on the fact that he had improved with medication.

A.   **The ALJ's determination that M.B.'s intellectual impairment did not meet the criteria for Listing 112.05(D) is not supported by the record.**

The ALJ erred in averaging the IQ scores from the Wechsler Series and using the score of 75 as M.B.'s full scale IQ and failing to address and analyze whether or not M.B. meets the second part of section D of listing 112.05 (Tr. 16, 18). Plaintiff argues that M.B. meets subpart D of listing 112.05 of

the CFR for Mental Retardation. Listing 112.05(D) provides that a child is mentally retarded if he has:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. §404, Subpart P, Appendix 1, Listing 112.05(D). Here, the ALJ used M.B.'s full scale score of 75 to represent his IQ. The record reveals, however, that the first part of 112.05(D) is fulfilled as M.B. attained a Perceptual Reasoning IQ score of 67 on the Wechsler scale.

The Wechsler series is identified as a sufficient way to test intelligence and indicates that "where verbal, performance and full scale IQs are provided in the Wechsler series, the lowest of these is used in conjunction with listing 112.05." §404, Subpart P, Appendix 1, Listing 112.00(D)(9). Dr. Ransom performed an intelligence evaluation in November of 2007 and found M.B. to have a "full scale IQ score of 75, verbal IQ score of 85, perceptual IQ score of 67, working memory IQ score of 91 and processing IQ score of 80...putting M.B.'s perceptual functioning in the mildly mentally retarded range" (Tr. 224). Because older versions of WISC use different terms to identify the areas of testing, the WISC-IV Administration and Scoring manual instructs that the "perceptual reasoning" used in the

-Page 9-

WISC-IV (and Dr. Ransom's evaluation) replace the term "performance IQ" from the WISC-III (which was used in the listing). <u>Green ex rel. K.C.G. v. Astrue</u>, No. 09-CV-1028, 2011 WL 1440363, at *4 (M.D. La. Feb. 15, 2011) (<u>citing</u> David Wechsler, <u>WISC-IV Administration and Scoring Manual</u>, p. 4, The Psychological Corporation (2003). Accordingly, M.B. meets the first part of listing 112.05(D) based upon Dr. Ransom's testing in November of 2007.

However, the regulations also require that "IQ test results must be sufficiently current for accurate assessment under 112.05 . . . IQ test results obtained between ages 7 and 16 should be considered current for . . . 2 years when the IQ is 40 or above." 20 C.F.R. §404, Subpart P, Appendix 1, Listing 112.00(D)(10). Therefore, M.B.'s IQ score is sufficiently current from the day the test was administered until November 2009. The ALJ, however, declined to order an updated IQ test during the hearing (Tr. 32-33). Therefore, the record contains insufficient evidence to determine whether M.B. met the first part of the listing after November 2009.

The second part of listing 112.05(D) requires M.B. to have a physical or other mental impairment imposing an "additional and significant limitation of function," as defined by 20 CFR

§416.924(c).[1]   The   ALJ   determined   that   M.B.   has   a   severe
combination   of   impairments   when   his   attention   deficit
hyperactivity   disorder,   borderline   intellectual   functioning   and
learning   disability   are   considered   together.   It   is,   therefore,
possible   that   the   ALJ's   findings   support   the   conclusion   that
M.B.'s   severe   combination   of   impairments   satisfies   the   "other
impairment"   requirement   of   Listing   112.05(D).

However,   "few   courts   have   addressed   the   meaning   of   the
112.05(D)   second   prong   requirement"   and   the   regulations   do   not
define   the   term   "additional."   <u>Castillo v. Barnhart</u>,   No.   00   CIV.
4343   (MBM),   2002   WL   31255158,   at   *10   (S.D.N.Y.   Oct.   8,   2002).
Therefore,   it   is   uncertain   whether   the   overlap   between   a
component   of   the   severe   impairment   and   the   low   IQ   precludes   the
finding   of   an   "additional   limitation."   M.B.'s   borderline
intellectual   functioning   overlaps   with   the   low   IQ   score   on   the
Welchsler   series,   making   it   uncertain   whether   he   has   an
"additional   and   significant   limitation".   The   court   in   <u>Castillo</u>
supra   stated   that   "finding   that   a   child   has   an   additional
impairment   (<u>besides low IQ</u>),   and   that   this   impairment   is   "severe"

---

[1] For listings 112.05(D) and 112.05(F), the degree of
functional limitation the additional impairment(s) imposes will
be assessed to determine if it causes more than minimal
functional limitations, i.e., is a "severe" impairment(s), as
defined in §416.924(c). If the additional impairment(s) does not
cause limitations that are "severe" as defined in §416.924(c), it
will not be found that the additional impairment(s) imposes an
additional and significant limitation of function.

under section 416.924(c) means that the impairment satisfies the 112.05(D) requirement of an impairment imposing an "additional and significant limitation of function." <u>Castillo v. Barnhart</u>, *9(emphasis added). The court in <u>Castillo</u> was unequivocal in the assertion that the child's ADHD (which was determined to be severe) qualified as an "other mental impairment" under the second prong of 112.05(D). <u>Id.</u> However it is not M.B.'s attention deficit hyperactivity disorder alone that has been determined to be severe: the ALJ stated that the <u>combination</u> of the three components was severe, not any singular component.

I therefore remand the issue for a determination regarding whether M.B. satisfies both prongs of 112.05(D).

B. **The ALJ's determination that M.B.'s impairments were not functionally equivalent to the listings is not supported by the record.**

Plaintiff argues that the ALJ improperly determined that M.B.'s impairments were not functionally equivalent to the listings. The ALJ evaluated the six domains of functioning and found a marked limitation in interacting and relating with others, and a less than marked limitation in the remaining five domains. However, his evaluation of the domains acquiring and using information and attending and completing tasks rely on reports of M.B.'s behavior while taking his medication, most

notably Adderall.[2] The ALJ's determination of a less than marked limitation in M.B.'s ability to acquire and use information was supported by the fact that "the record shows [M.B.] has done well in school when taking his medication properly" (Tr. 20). The ALJ also supports his determination of a less than marked limitation in the domain of attending and completing tasks by citing M.B.'s teacher's note that M.B. was able to "focus, pay attention and be productive in the classroom setting when he was taking his medication properly" (Tr. 20) (citing Tr. 184). The ALJ also referenced M.B.'s teacher's note that M.B. "can work well independently if on the proper medication" (Tr. 20) (citing Tr. 180)(Emphasis added). However, the record indicates that M.B.'s prescription for Adderall was discontinued by his doctor in October of 2008 as a result of side effects.

In both of the above determinations the ALJ fails to address the fact that M.B.'s Adderall prescription was discontinued for medical reasons in October of 2008 and that his behavior changed when he was not taking Adderall or taking a lower does of Adderall (Tr. 295). Reports of M.B.'s behavior while off Adderall are drastically different from those while he was taking the medication. M.B.'s teacher states that M.B. can work well

---

[2] M.B. has continuously been prescribed 40 mg of Strattera since February of 2006. However the record indicates that the behavioral changes occurred as a result of changes to his Adderall prescription which is the primary focus of the medical evidence in the record (Tr. 246).

independently if properly medicated, but if is unmedicated, M.B. "cannot finish tasks, has trouble staying focused and disrupts the educational process" (Tr. 180). She notes that M.B. was focused, productive and attentive in class before the prescription for Adderall was discontinued but after the "adjustments to his medicine regimen he has been unfocused, absent from school and increasingly disruptive" (Tr. 184). She notes further that the four weeks prior to her evaluation M.B. was increasingly absent from school. The record indicates that this four week period commenced with the beginning of M.B.'s discontinued use of Adderall (Tr. 295). A report card on file from November 2008, the month after the Adderall prescription was discontinued, shows eleven illegal absences and seven tardies. (Tr. 190). Yet, in the third and fourth grades combined, M.B. only missed four days and was tardy fifteen times combined (Tr. 1186-88).

The discontinuation of M.B.'s Adderall prescription and the consequential effect on his behavior should have been taken into consideration by the ALJ, and therefore, I remand this case to the ALJ to reconsider M.B.'s functional limitations in light of the effect that the discontinuation of his Adderall prescription has on his behavior to the extent that, combined with other evidence in the record, it substantiates a finding of disability.

## **CONCLUSION**

The ALJ's decision is remanded to the Commissioner for further expedited proceedings consistent with this opinion.  The Commissioner's motion for judgment on the pleadings is denied without prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
     MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          June 20, 2012